THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* ARVEY F. HEVERN, Defendant.

City Magistrates' Court of New York, Borough and County of Bronx, Sixth District, April 26, 1926.

Crimes — bail — application for bail by defendant charged with commission of felony — Code of Criminal Procedure, § 552-a (as added by Laws of 1926, chap. 419), prohibiting admittance to bail of any person charged with felony until his finger prints shall be taken to ascertain whether he has previously been convicted is unconstitutional — State Constitution, art. 1, §§ 5, 6, and U. S. Constitution, 14th Amendt., § 1, violated — defendant claims he has never previously been convicted of felony, misdemeanor or offense of grade less than misdemeanor — no previous records or finger prints were produced on arraignment — defendant entitled to be admitted to bail in Magistrate's Court.

Section 552-a of the Code of Criminal Procedure (as added by Laws of 1926, chap. 419) reciting that no person charged with a felony or with any of the misdemeanors specified in section 552 of said statute, as amended, shall be admitted to bail until his finger prints shall be taken to ascertain whether he has previously been convicted of crime, and further providing that no person shall be admitted to bail until his previous record, if any, shall be submitted to the judge, justice, magistrate or other person empowered to admit him to bail, is oppressive and unreasonable and is contrary to article 1, section 5, of the State Constitution.    It also violates section 1 of the Fourteenth Amendment

## 142 PEOPLE v. HEVERN.

of the United States Constitution, and section 6 of article 1 of the State Constitution which provide that no person shall be deprived of life, liberty or property without due process of law, for the reason that finger printing is an encroachment upon the liberty of the person. Furthermore, compulsory finger printing before conviction is in violation of the constitutional mandate that no person shall be compelled in any criminal case to be a witness against himself.
Accordingly, defendant, charged with felonious assault, is entitled to bail in the Magistrate's Court in the sum of $1,000, where it appears that, upon arraignment, he denied that he previously had been convicted of any felony, misdemeanor or offense of a grade less than a misdemeanor and no written record of previous convictions or finger prints was produced.

APPLICATION for bail by defendant charged with a felony, involving construction of chapter 419 of the Laws of 1926, amending the Code of Criminal Procedure.

*John E. McGeehan* and *Edward M. O'Gorman,* for the plaintiff.

*H. Bennett Salomon* and *Benjamin Antin,* for the defendant.

GORDON, City Magistrate. On Saturday afternoon, April 24, 1926, the defendant drove an automobile, and collided with a pedestrian. He was arrested, and is charged with felonious assault, a felony. He was taken to a police precinct station house that afternoon, and arraigned in the night court that evening, where he applied for bail. The magistrate refused to fix bail for lack of power. The defendant was remanded to the police. He was returned to the police station, where he remained over night. He was again arraigned in the Magistrates' Court having jurisdiction of the crime the following morning, Sunday, April 25, 1926. No finger-print or other record of the defendant was then produced. The defendant was again remanded to the police for arraignment upon production of previous record and finger-prints. Later in the day (Sunday), upon certain records then produced, he was admitted to bail by a County Court judge for arraignment to-day in this court. There was another bond, on a charge for reckless driving, which is not now involved. The defendant is again arraigned by the police before me this Monday, April 26, 1926. No previous or finger-print records are produced.

It should be noted that no finger-print records are kept in any of the police precinct station houses in the city of New York; that there are there no facilities for comparison and verification of finger-prints. So, too, there are no complete finger-print records or other records of crime commission in any of the several Magistrates' Courts of the city of New York, except partial records of disorderly conduct, disorderly persons, vagrants and intoxicants. Police headquarters (Center and Grand streets) is the only place where complete finger-print records are maintained.

PEOPLE *v.* HEVERN. **143**

Misc. 141]       City Magistrates' Court of New York, April, 1926.

It was agreeable to the People and the defendant, when the defendant was arraigned Sunday morning, in view of the confinement of the injured pedestrian, due to his injuries, that the case be adjourned until May 10, 1926, but for the fact that such disposition would have meant a commitment of the defendant to the sheriff until such time. This would have prevented his finger-printing, and for all practical purposes would have resulted in a complete denial of bail to him. It is for that reason that the temporary remand was ordered, and the arraignment to-day becomes necessary. The defendant asserts that he has never previously been convicted of any felony, misdemeanor or offense of a grade less than a misdemeanor; but no written record in substantiation thereof is produced. The defendant is thus charged with a felony, and no previous record having been produced, if chapter 419 of the Laws of 1926 is constitutional, this court is without jurisdiction to allow bail.

In response to an asserted necessity for more stringent penal laws, the Legislature of the State of New York enacted chapter 419 of the Laws of 1926, which, in material particulars, amends sections 552, 553, 554, 557 and 558 of the Code of Criminal Procedure, and enacts a new section 552-a. Whether this amendment is repugnant to the State and Federal Constitutions is a question pressing for immediate solution in the Magistrates' Court. These amendments introduce a new practice into the administration of the criminal law of the State, and involve a serious invasion upon the liberty of our people.

The novelty of the legislation does not, of itself, militate against its validity. The new law works two radical changes, the one procedural, and the other substantive. *First*, it divests the city magistrate of his previous power to allow bail in all cases of felonies, specified misdemeanors, and one species of disorderly conduct, where a defendant (a) has previously been convicted within the State of a felony, or an attempt to commit a felony, or a crime under the laws of another State or country, which, if committed within this State, would be a felony, or (b) has been twice convicted of such classified misdemeanors or specified disorderly conduct. Bail in such cases can be allowed only by a justice of the Supreme Court or by a judge of the Court of General Sessions or a judge of the County Court where the defendant is charged. (Code Crim. Proc. § 552, as amd. by Laws of 1926, chap. 419.) Since the magistrate in such cases cannot allow bail, he may not continue it. Bail allowed in a case pending in the Magistrates' Court must be renewed or continued each time the case is adjourned, and pending the renewal the defendant must in each instance be reimprisoned.

*Second,* it, by implication, commands that all persons charged with these crimes shall forthwith, upon arrest, be submitted to finger-printing, a practice heretofore permitted only after conviction, and then only for more serious crime.

The expressed design of the finger-print is to facilitate the inquiry into the past criminal record of the defendant, for the purpose of determining where the power to fix bail rests, and primarily, that the amount of bail may be in proper relationship not only to the crime charged, but to the defendant's previous criminal career.

" No person charged with a felony or with any of the misdemeanors or offenses specified in the preceding section shall be admitted to bail until his finger-prints shall be taken to ascertain whether he has previously been convicted of crime. Upon the arrest of a person so charged it shall be the duty of the peace officer having him in custody to forthwith ascertain his previous record, if any, from the files and records kept in the place in which he is arrested and report immediately thereon. Nor shall he be admitted to bail until his previous record, if any, shall be submitted to the judge, justice, magistrate or other person empowered to admit to bail." (Code Crim. Proc. § 552-a, as added by Laws of 1926, chap. 419.)

Whilst, in express terms, there is no provision to compel a defendant who refuses to be finger-printed, there is little doubt that such power is necessarily implied from the context of the law, its design and the machinery devised for the fixing of bail. There is even less doubt that in practice finger-printing will follow as of course upon arrest.

It is important to note that whilst the expressed design of the finger-print is to determine questions of bail, the defendant may be subjected to the process, regardless of any application by him for bail. A defendant who seeks no bail, or even expressly disclaims it, and is content to await in jail his trial in court, may still be submitted to the treatment. It is noteworthy that whilst the seeming purpose of the law is to reform bail practice as a curb to crime, no remedial change is made. No different, higher or other bail is required. All crimes which in the past were bailable are still bailable. The past criminal records of persons arraigned for crime have always in the past been presented to the court by the arresting officer and been considered in the fixing of bail. There has been no difficulty in identifying old offenders. Those with long criminal records have been kept in prison pending trial by bail so high as to be unobtainable. The number of forfeited recognizances for non-appearance in the Magistrates' Court is

PEOPLE *v.* HEVERN. **145**

Misc. 141]       City Magistrates' Court of New York, April, 1926.

almost nil. No substantial change has come from this legislation except that the power to fix bail has been transferred from the judge before whom the case is pending, who is charged to investigate it, who is presumed, in a measure at least, to be conversant with the facts, to another judge who at the time has no jurisdiction over and no acquaintance with it. Indeed, in cases where the magistrate has sole jurisdiction to hear and determine, it often becomes necessary during the continuance of the case to increase the bail. Even this power is now denied him in certain cases. Bail practice needs recasting. But remedies do not come from substituting the non-rational for the rational.

The two aspects of the new law will be cons'dered separately. The Magistrates' Court is the creature of the Legislature which has fixed its jurisdiction and powers and may enlarge and limit them, so long as " due process of law " is insured. That the new law may be impractical and unfeasible in operation does not destroy its validity. The Magistrates' Court has threefold jurisdiction:

(a) It investigates felonies and misdemeanors, and holds defendants for the grand jury or trial in the Court of Special Sessions. In such cases the magistrate may not acquit, however meritorious the defense, once a *prima facie* case is established. The offense, even though a felony, may be but *malum prohibitum* and without opprobrium. A defendant arraigned in the Magistrates' Court as a second offender upon a felony charge may not have bail in the court where he is held and examined, and must either remain in prison or seek one of the enumerated judges of courts of record.

(b) It has jurisdiction to hear and determine complaints for specified misdemeanors upon defendant's consent.

(c) It has exclusive jurisdiction to hear and determine charges of offenses of a grade less than a misdemeanor, principally disorderly conduct, vagrancy, disorderly person and intoxication. These cases begin and end in the Magistrates' Court, yet with respect to certain of them (Penal Law, § 722, subd. 6) the magistrate, in the contingencies specified in the new law, may not release on bail. It may well be argued that the regulation of bail by a court invested with full jurisdiction to entertain, hear and determine, is an integral part of the " due process of law," which article 1, section 6, of the State Constitution, and section 1 of the Fourteenth Amendment of the United States Constitution, guarantee, particularly since the magistrate sits on Saturday and Sunday, while the Supreme, General Sessions and County Courts are not then in session. But there is a graver objection to this circumscription of the right to bail.

Article 1, section 5, of the Constitution of the State of New York

10

provides: " Excessive bail shall not be required    *    *    *." The prohibition against excessive bail necessarily includes the denial of all bail, as well as its hedging in with conditions which are impractical, unreasonable or onerous of performance.

As already indicated, I am impressed that the new law, particularly in respect to cases where the Magistrates' Court has plenary jurisdiction, is seriously open to the objection that it involves a denial of due process of law. But I prefer to rest my conclusions on broader grounds. A defendant who refuses to be finger-printed may not be bailed. It is assumed for the moment that he has a choice. Very probably his refusal will be futile. A fair reading of the new law imposes upon the officials the duty to finger-print the classified defendants.

Mere arrest upon a charge of crime presupposes no guilt. It is one of society's risks. To escape it, one must find the wilderness. A charge of crime needs only a complaint from anybody. A defendant is arraigned, in fact innocent, and refuses to submit to finger-printing. A recoilment from it is not unnatural. It cannot be said that the refusal is unreasonable or unjustified. Yet he is denied bail. The requirement for finger-printing is oppressive and unreasonable. It contravenes article 1, section 5, of the Constitution of the State of New York, and in my judgment is unconstitutional.

There are other grounds upon which the unconstitutionality of the law must be declared. Article 1, section 6, of the Constitution of the State of New York provides: " No person shall    *    *    *    be compelled in any criminal case to be a witness against himself; nor be deprived of life, liberty or property without due process of law."

The clause first quoted is also a prohibition in precise words, in section 1 of the Fourteenth Amendment of the United States Constitution, against the action of any State. Finger-printing is an encroachment on liberty of person. It is justifiable, as is imprisonment, upon conviction for crime, in the exercise of the police powers of the State for the purpose of facilitating future crime detection and punishment. What can be its justification when imposed before conviction? What constitutes " due process of law " is ordinarily for the determination of the Legislature, but it may not act without limit. From the beginning of time it has been recognized that notwithstanding the presumption of innocence and in order to make effective punishment for crime, it is not an improper invasion of personal liberty to arrest a defendant on a charge of crime and to keep him detained until trial. The purpose of the arrest and detention is to insure the defendant's appearance and to prevent escape. Recent tendencies of our laws have been in the direction

PEOPLE *v.* HEVERN. 147

Misc. 141]    City Magistrates' Court of New York, April, 1926.

of lessening the rigor and hardship of imprisonment before conviction, and wherever consistent with the orderly administration of justice the summons has been substituted for the warrant. The present legislation is a step in the other direction and adds burdens upon mere indictment for crime. This physical restraint is not imposed as an incident of punishment for crime after conviction, but while the presumption of innocence endures.

It is urged in support of the law that the finger-print is in use as a means of identification in various departments of government unrelated to criminal law enforcement, such as license and permit bureaus and immigration agencies; that there is a growing movement to introduce it among our children in the public schools and elsewhere for better vital statistics; in fine, that finger-printing is losing in the public mind its association with criminal guilt. Time may be when this system of identification becomes so universal that it is no longer connected in thought with crime. The *mores* of people constantly change. But the innocuity of a practice must be tested in the light of its prevailing and not possible future significance. To charge that one's finger-print records have been taken would ordinarily convey an imputation of crime and very probably support a complaint for libel *per se.* In my judgment compulsory finger-printing before conviction is an unlawful encroachment upon person in violation of the State and Federal Constitutions.

Lastly, finger-printing before conviction involves prohibited compulsory self-incrimination. It is no argument that proof of prior conviction may not be offered in chief in a criminal prosecution. It is evidence for impeachment. The Constitution prohibits its compulsion from a defendant. The cases of *People* v. *Defore* (242 N. Y. 13); *People* v. *Van Wormer* (175 id. 188) and *People* v. *Gardner* (144 id. 119) are not decisive. There is a marked difference between taking a defendant's shoes and placing them in foot-marks leading to a house where a murder was committed, or forcibly taking a murderer before his dying victim for identification, or forcibly taking stolen property from a thief or examining him for bruises — all of which have, by adjudication, been held not to be violative of the constitutional prohibition against compulsory self-incrimination — and the involuntary subjection of a defendant to finger-printing, a practice heretofore regarded solely as one of the incidents of conviction for crime. Concededly, there may not be a compulsory written examination of a defendant as to his past career, and in my judgment he may not be compelled to make disclosure of his past life by the nod or nay of the head or the lines of his hands. Those cases to

which reference has last been made are concerned only with self-incrimination. The question under consideration, in addition, involves an invasion of personal rights constitutionally guaranteed, and the imposition of unreasonable conditions concerning bail. In any event, the doctrine of those cases should be limited to their facts and not extended, except by constitutional enlargement.

Whilst ordinarily it is the better practice for the courts of first resort to presume the constitutionality of statutes and leave them for critical analysis and condemnation to appellate courts, the present situation involves fundamental rights of liberty requiring immediate definition. A more effective enforcement of the criminal law and the holding of known criminals in restraint prompted this legislation, and however beneficent and necessary the remedy, and however laudable the purpose of the Legislature may be, they cannot be a just excuse for annulling and destroying constitutional safeguards and guaranties.

In my judgment chapter 419 of the Laws of 1926 is unconstitutional because it contravenes the Fourteenth Amendment of the United States Constitution and article 1, sections 5 and 6, of the Constitution of the State of New York.

I accordingly fix and allow bail in the sum of $1,000.