THE STATE OF NEW JERSEY, RESPONDENT, v. JOHN
BORG AND CHARLES ROSENBERG, PROSECUTORS.

Argued October 7, 1930—Decided January 7, 1931.

Before Justices CAMPBELL and BODINE.

For the state, *Edward O. West.*

For John Borg, *Carey & Lane* and *Mackay & Mackay.*

For Charles Rosenberg, *Samuel Denson.*

PER CURIAM.

A motion was made to quash the following indictment
presented into the Bergen Oyer and Terminer March 18th,
1930:

"Bergen county, to wit: The grand inquest of the State
of New Jersey in and for the county of Bergen, upon their
respective oaths, present, that John Borg and Charles Rosen-
berg, late of the city of Hackensack, in the said county of
Bergen, on or about the eighth day of February, in the year
of our Lord one thousand nine hundred and thirty, at the
city aforesaid, in the county aforesaid, and within the juris-
diction of this court, did wickedly, maliciously, fraudulently,
corruptly, falsely, knowingly, willfully, and unlawfully com-
bine, unite, confederate, conspire and bind themselves by
agreement to deprive, cheat and defraud the State of New
Jersey of the sum of two hundred thousand [$200,000]
dollars, lawful money of the United States of America, to
which sum of money the State of New Jersey was then and

there lawfully entitled, and in pursuance of such wicked and unlawful conspiracy the said Charles Rosenberg did refuse and cause the refusal to pay a valid and lawful draft or check of the treasurer of the State of New Jersey in said amount of two hundred thousand [$200,000] dollars lawful money of the United States of America.

"Contrary to the form of the statute in such case made and provided, against the peace of the state, the government and dignity of the same.

EDWARD O. WEST,<br>
*Prosecutor."*

The motion is based upon two grounds: First, that the indictment is insufficient upon its face; and secondly, that it was the result of bias, prejudice, passion and malice.

The indictment is obviously insufficient upon its face. John Borg, one of the defendants, was the editor and publisher of the Bergen Evening Record; while Charles Rosenberg was a director and chairman of the board of the Little Ferry National Bank.

The state seeks to justify the indictment as one at common law and not under section 37 of the Crimes act. 2 *Comp. Stat., p.* 1757. A conspiracy between the editor of a newspaper and a banker to defraud the state of a large sum of money should not be lightly made nor vaguely couched. In *State* v. *Young,* 37 *N. J. L.* 184, and *Madden* v. *State,* 57 *Id.* 324, indictments against public officials for conspiracy at common law were sustained as sufficient, and upon these two cases the state relies. Had the draftsman of the present indictment exercised the same care as was taken in those cases the principles of law there enunciated would have been pertinent.

In *State* v. *Young, supra,* the principal averments were as follows: That certain persons named therein were commissioners to * * * estimate * * * damages to be sustained by * * * owners of lands and real estate which the mayor and common council had then and there determined to take * * * for the opening of South Four-

teenth street, in the city of Newark; and that said Young was chairman of said commissioners * * *; that one * * * was the owner and possessor of a certain lot, a description of the same being set forth * * *. The charge of conspiracy was in these terms: "And the grand jurors aforesaid, upon their oath aforesaid, do further present that the said * * * chairman of the said commission, and the said * * * being then and there an alderman * * * did wickedly, falsely, fraudulently and unlawfully conspire, combine, confederate and agree together, to cheat and defraud the said city." The overt acts are then set forth with particularity so that the part played by the conspirators was apparent.

In *Madden* v. *State, supra,* the substance of the averments were as follows: That the defendants being street and water commissioners of Jersey City did conspire to cheat and defraud Jersey City of its moneys by certain means particularly specified.

The present indictment contains mere general allegations. It nowhere states that Charles Rosenberg was under a duty because of an office, or otherwise, to pay the draft of the State of New Jersey. Nor does it particularize concerning the draft, nor does it contain any description thereof so that the same can be identified. Obviously, citizens in general are under no duty to pay the drafts of the state, and if Rosenberg was under a duty to pay a particular draft the facts and circumstances should be pleaded so that he and his alleged co-conspirator can know the nature of the offense charged.

"The indictment should contain such a specification of acts and descriptive circumstances as will on its face fix and determine the identity of the offense, with such particularity as to enable accused to know exactly what he has to meet, to give him a fair and reasonable opportunity to prepare his defense, and avail himself of a conviction of acquittal as a bar to further prosecution arising out of the same facts." 31 *Corp. Jur.* 661.

"A person indicted for a serious offense is presumably

innocent, and the sufficiency of an indictment must be tested upon the presumption that he is innocent and has no knowledge of the facts charged against him." 31 *Corp. Jur.* 663.

In *State* v. *Allgor,* 78 *N. J. L.* 314, the court said: "Want of certainty in the statement of the offense is, therefore, the vice of this indictment, and at common law the rule is fundamental that an indictment must be certain in its allegations, so that it can be seen upon inspection, not merely what nature of crime, but what particular crime is intended to be charged. 2 *Hale P. C.* 193; *Rex* v. *Suddis,* 1 *East* 314; *State* v. *Middlesex Traction Co.,* 38 *Vr.* 14; *United States* v. *Cruikshank,* 92 *U. S.* 542; *State* v. *Morris and Essex Railroad Co.,* 7 *Vr.* 555."

In *Wood* v. *State,* 47 *N. J. L.* 461, members of the board of chosen freeholders of Camden county were indicted for a conspiracy to defraud the county by directing the payment of $160 to a man named Morgan. Mr. Justice Reed said: "The charge is that they unlawfully conspired to get into the hands of one Morgan a sum of money. It does not say that Morgan was not entitled to a sum of money. Nor does it charge that the defendants knew that he was not entitled to it. The *charge* that they wickedly devising to unlawfully obtain this money, &c., *is meaningless, when the details of the conspiracy are set forth,* by which it does not appear that the person who was to receive the fund was disentitled to it, or that the defendant supposed that he was without right to be so paid."

From the deposition taken on the rule, it appears that at the time the indictment was found there was no deposit of state funds in the Little Ferry National Bank. An account had been opened in that bank in the early summer of 1929. After the commencement of an investigation of the municipal affairs of Lodi township, the state treasurer sent forward a draft for the full amount of the deposit. Mr. Rosenberg, under the impression that the deposit was for a stated time, caused the draft to be returned with such notation. On February 13th, 1930, or less than a week thereafter, a new draft was sent forward, which was honored by the bank.

This occurred a month before the indictment in question was voted.

No definite transaction is pleaded so that we cannot say what the grand jurors had in mind, but from that which transpired it is apparent that there was not sufficient evidence before that body.

On June 12th, 1930, twelve members of the grand jury, who voted in favor of the indictment, requested the prosecutor of the pleas to quash the same, stating: "We are satisfied that there never was and is not now any legal basis to support this indictment. We feel that in justice to the parties concerned, and in justice to the people of Bergen county, and in justice to the grand jury, which we believe was misled into reporting an indictment, that the application for the quashing of this indictment should be granted."

There were two witnesses before the grand jury: One an officer of the City National Bank and Trust Company of Hackensack. He gave no testimony in anywise implicating Mr. Borg with the transaction. Further, he seems to have known nothing except about the ultimate honoring of the draft which closed the account. The testimony of this witness supports the statements of the majority of the jury that there was no legal basis for the indictment. The other witness gave no testimony as to the evidence he presented to the grand jury, although he had the opportunity so to do. *State* v. *Borg,* 150 *Atl. Rep.* 189.

"The constitution provides that no person shall be held to answer for a criminal offense, unless on the presentment or indictment of a grand jury; but it neither provides the mode of presentment nor the evidence upon which it shall rest. Nor can it with propriety be said to be a right of the defendant to be informed of the evidence upon which the grand jury acted, or to avail himself of its legal incompetency." *State* v. *Daylon,* 23 *N. J. L.* 57.

In *State* v. *McCarthy,* 76 *N. J. L.* 295, Mr. Justice Swayze said: "By our constitution no person can be held to answer for a criminal offense, unless on the presentment or indictment of a grand jury. This must mean a legally constituted

grand jury having the qualities which grand juries were required to have at the time the constitution was adopted, so far as those qualities are essential to secure the end of the protection of individual liberty. * * * It can hardly be denied that if the grand jury is to serve its purpose of standing between the state and the citizen, it is essential that it should be impartially selected and not chosen for the purpose of securing indictments. If the latter was to be permitted, the constitutional guarantee might as well be effaced. * * * A grand jury summoned and impaneled otherwise than impartially may be a grand jury within the meaning of the constitutional provision as to the person who is the subject of the sheriff's hostility. * * * It is no answer to say that the defendant cannot be injured as he has the opportunity to acquit himself before a traverse jury. If he is innocent, he is injured by having a tribunal, which the law has provided as a shield for his protection, used as a sword to smite him. * * * It is trite to say that the worse excesses of revolutionary periods have been due to a disregard of legal safeguards in order to secure more speedily what a dominant party for the moment deemed to be justice * * *.

"It is enough for our present purpose to say that we think no public necessity requires that we should refuse in this case to exercise our discretion. There is still time for a properly chosen grand jury to act hereafter, and it is to the interest of public justice that the matter should be considered at a time when the passions of the moment shall have subsided, and that the defendants should not seem to be the victims of political animosity."

The Bergen county grand jury was composed of twenty-one Republicans and two Democrats. The democratic jury commissioner was Martin J. Toolen, since removed by the governor.

The prosecutor of the pleas before the indictment was found, and at the time his deposition was taken, expressed great hostility to Charles Rosenberg. At the time the indictment was voted, the prosecutor and his assistants were in the grand jury room. The subsequent statement of the

grand jurors suggests, at least, that coercive methods were employed. The insufficient allegations of the indictment itself, the partisan character of that body, coupled with the presence of a hostile prosecutor, tends to weaken public confidence, especially when a majority sought afterward to undo the same.

The background of the situation brings the case more strikingly within the rule of the McCarthy case. The Supreme Court, at the intervention of taxpayers, had commenced an investigation of the affairs of the township of Lodi. Many active Republican officeholders in Bergen county were opposed to the investigation. The defendant John Borg, through his newspaper, was active in giving publicity to that which transpired. The newspaper accounts contained many reflections upon the integrity of those who had been lately concerned in township affairs.

It seems evident that the financing of the sewer construction in Lodi township had not been well provided for. The bonds of the municipality necessary for the work were beyond the legal limit. The Little Ferry National Bank had done some temporary financing but had reached its limit. A state deposit, which was afterwards withdrawn, was procured and the bank invested in the township bonds. The community was a growing one and the hope existed that the state deposit might remain till the bonds, by the growth of ratables, became legal and marketable.

Many Bergen county officeholders were close friends and were opposed to those sponsoring and aiding the investigation of the Lodi affairs. More than one important officeholder, and at least one of the grand jurors, had urged, with little tact, those responsible for the investigation to cease their activity. The question of party expediency was uppermost in the minds of men charged with an impartial administration of law. Animosity was rampant in certain coteries towards Borg and Rosenberg. Rosenberg had been very frank. Borg was aiding the investigation. He and his entire staff was called before the grand jury, and at least one man boasted that he would, for one day, stop the publication of the news-

paper. Rosenberg was distasteful to the prosecutor, because he believed that he had hurt his friends by what he had said and done.

It is perhaps enough, without going more into the details presented and without considering the depositions which the state moved to suppress and which we think were proper, to say that the insufficiency of the indictment and the partisan activities of those concerned in procuring the same, leads us to believe that "no public necessity requires that we should refuse in this case to exercise our discretion." There is still time for a properly constituted grand jury to consider legal evidence bearing upon the situation, and for an indictment to be drawn with sufficient particularity so that the crime will be apparent upon inspection. It is further possible that a grand jury less closely associated with partisan politics may more fully and impartially weigh and consider the matters presented.

The motion to quash will be granted.