UNITED STATES of America, Plaintiff,

v.

Howard KRAPF, d/b/a Krapf Trucking Service.

Crim. A. No. 251-59.

United States District Court
D. New Jersey.

Feb. 10, 1960.

Chester A. Weidenburner, U. S. Atty., by John Jay Mangini, Asst. U. S. Atty., Newark, N. J., for plaintiff.

Arthur J. Piken, Jamaica, N. Y., for defendant.

HARTSHORNE, District Judge.

A criminal information in twelve counts was filed against defendant for violation of the Motor Carriers chapter of the Interstate Commerce Act, 49 U.S. C.A. § 322(a), both as enacted in 1949 and as thereafter amended in 1957. Upon the imposition of sentence on a plea of guilty to seven counts, the United States Marshal in charge of fingerprinting in this District attempted to fingerprint the defendant, to which the defendant objected. Thereupon counsel on both sides submitted to the Court the question of the propriety of such fingerprinting.

Defendant's prime objection to being fingerprinted is based upon his contention that his violations do not constitute an offense or crime of such a nature that the Marshal is authorized to fingerprint him, plus some ancillary objections hereinafter alluded to.

The original Act only fixed a maximum penalty for each offense so that a fine of but $1 was lawful. The amendment cured this apparent defect by fixing a minimum penalty as well. Both acts only penalized violations which were

"knowingly and willfully" done, and provided for a fine "upon conviction", and that "each day of such violation shall constitute a separate offense."

 The Congressional statutes are searched in vain for any authority in express words for the fingerprinting of anyone. The only action taken by the Congress in that regard apparently is the Annual Appropriations Act for the Departments of State, Justice, the Judiciary, and related agencies, which for the fiscal year ending June 30, 1959 appropriates "for expenses necessary for the detection and prosecution of crimes against the United States * * * acquisition, collection, classification and preservation of identification and other records and their exchange with, and for the official use of, the duly authorized officials of the Federal Government, of State, cities, and other institutions * * *" P.L. 85–474; 72 Stat. 244; U. S. Code Congressional and Administrative News, 85th Cong. 2d Sess. 1958, p. 292. The only additional Congressional authority impliedly existing for Federal fingerprinting is the provision that "The United States Marshal and his deputies, in executing the laws of the United States within a state, may exercise the same powers which a sheriff of such state may exercise in executing the laws thereof." Title 28 U.S.C.A. § 549; Act June 25, 1948, Chap. 646, 62 Stat. 912. In other words, a United States Marshal has the same powers in executing the laws of the United States in the state where the Marshal serves, as the Sheriff of such state has in executing the state laws. So the question, is, what fingerprinting power does a New Jersey Sheriff have under the State law, which, by appropriate analogy under the Federal law, inheres in the United States Marshal?

But it cannot be validly argued that the absence of a Federal statute expressly authorizing United States Marshals to fingerprint deprives them of the right to do so, this on the theory that a statute which imposes the duty to convict persons of Federal criminal violations carries with it by implication every reasonable means necessary to effectuate that conviction. United States v. Kelly, 2 Cir., 1932, 55 F.2d 67, 83 A.L.R. 122. The Court there said, at page 70:

"We find no ground in reason or authority for interfering with a method of identifying persons charged with crime which has now become widely known and frequently practiced both in jurisdictions where there are statutory provisions regulating it and where it has no sanction other than the common law."

But the question still remains, what is the general authority of the New Jersey Sheriff to fingerprint, now vested in the United States Marshal by analogy under the above mentioned Federal Act?

The New Jersey statute in question provides:

"The sheriffs * * * shall immediately upon the arrest of any person for an indictable offense, * * * [plus other provisions here immaterial] take the fingerprints of such person according to the fingerprint system of identification established by the Superintendent of State Police * * *." N.J.S.A. 53:1–15 (Brackets this Court's)

The New Jersey statutes further provide:

"The supervisor of the state bureau of identification shall co-operate with the bureaus in other states and with the bureau in the department of justice of the United States and shall develop and carry on an interstate, national and international system of identification within the requirements of the state bureau of identification." N.J.S.A. 53:1–19.

Accordingly, the United States Marshal, irrespective of other authority here inapplicable, is authorized, as is a New Jersey Sheriff, to "take the fingerprints of * * *" any person arrested "for an indictable offense." The immediate:

question for decision therefore is whether or not Section 322(a), of the violation of which the defendant here was convicted, creates "an indictable offense."

■ It is, of course, well settled that there are many offenses of a criminal nature, both State and Federal, which are not common law crimes nor constitutional crimes within the provisions of the United States Constitution, Article III, or Amendment VI.[1] Such offenses do not require a jury trial. Callan v. Wilson, 1888, 127 U.S. 540, 8 S.Ct. 1301, 32 L.Ed. 223; "Petty Federal Offenses and Trial by Jury", Frankfurter and Corcoran, 39 Harv.L.Rev. 917.

■ But, turning to the Federal Rules of Criminal Procedure 7(a), 18 U.S.C.A., we find that

"An offense which may be punished by death shall be prosecuted by indictment. An offense which may be punished by imprisonment for a term exceeding one year or at hard labor shall be prosecuted by indictment or, if indictment is waived, it may be prosecuted by information. Any other offense may be prosecuted by indictment or by information. * * * *"

In short, not only must an indictment be used for the two first stated classes of more serious offenses, but an indictment may be used to prosecute "any other offense". Thus at Federal law the commission of any "offense" is "indictable",

to use the terminology of the above State statute. See also Barron, Federal Practice & Procedure, Vol. IV, p. 55, 1951.

■■ The question at issue thus becomes whether the violations of which the defendant was convicted under Section 322(a), supra, were "Federal offenses." We turn to the language of that statute.[2] That the violations of both the statute as originally enacted and its amendment, under both of which the defendant was convicted, constitute Federal "offenses" is clear. Such is the very word used by the statute. Further, such a violator is subject to "conviction thereof." The fine imposed upon him as a result of such conviction is to be a certain amount "for the first offense", of a further amount "for any subsequent offense", each day of such violation to constitute "a separate offense." This clearly constitutes defendant as one convicted of a Federal "offense." It contradistinguishes defendant from one subject to a "writ of injunction" for a violation of subsection (b) of the same statute, or of subsection (h) of such statute, where the forfeiture of $100 imposed on its violator is to be "recoverable in a civil suit."

True, Section 322(a), supra, does not expressly call the offense to which it alludes "a misdemeanor", as do subsections (c) and (d) of Section 322. So we turn to the general provisions of the Federal Criminal Code, which clarify offenses generally, Title 18 U.S.C.A. § 1. These

1. Article III provides, among other things, "The Trial of all Crimes, except in Cases of Impeachment, shall be by jury, * * * *" Amendment VI provides, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, * * * *."

2. "Any person knowingly and willfully violating any provision of this chapter, or any rule, regulation, requirement, or order thereunder, or any term or condition of any certificate, permit, or license, for which a penalty is not otherwise herein provided, shall, upon conviction thereof, be fined not more than $100 for

the first offense and not more than $500 for any subsequent offense. Each day of such violations shall constitute a separate offense." 49 U.S.C.A. § 322(a).

"Any person knowingly and willfully violating any provision of this chapter, or any rule, regulation, requirement, or order thereunder, or any term or condition of any certificate, permit, or license, for which a penalty is not otherwise herein provided, shall, upon conviction thereof, be fined not less than $100 nor more than $500 for the first offense and not less than $200 nor more than $500 for any subsequent offense. Each day of such violation shall constitute a separate offense." As amended 1957.

provide, notwithstanding any act of Congress to the contrary:

"(1) Any offense punishable by death or imprisonment for a term exceeding one year is a felony.

"(2) Any other offense is a misdemeanor.

"(3) Any misdemeanor, the penalty for which does not exceed imprisonment for a period of six months or a fine of not more than $500, or both, is a petty offense."

Thereunder it is quite clear that, even in the absence of the use of the term "misdemeanor" in defining the nature of the offense of which defendant was convicted, his conviction was of "a petty offense." But that a petty offense is an "offense" of a criminal nature against the United States has already been shown by Callan v. Wilson, supra. In fact, it is well settled that, even if not called a crime, if punishment is imposed, as distinguished from a civil remedy, the offense is criminal in nature. Mossew v. U. S., 2 Cir., 1920, 266 F. 18, 11 A.L.R. 1261; United States v. Seibert, D.C.W. Va.1924, 2 F.2d 80. Indeed it has been repeatedly held that violations of Section 322(a), supra, constitute convictions of a criminal nature. United States v. Chadwick, D.C.E.D.Pa.1940, 39 F.Supp. 204; United States v. Great Eastern Lines, D.C.Va.1950, 89 F.Supp. 839; United States v. Gunn, D.C.W.D.Ark. 1950, 97 F.Supp. 476. Not only so, but the history of Section 322(a) itself shows that what Congress intended by its enactment thereof was to impose sanctions of a criminal nature. See the allusions thereto in Senate Report 82, February 25, 1949, House Report No. 971, July 6, 1949, both to accompany S. 256, where, under Section 15 of such report, the Section in question is referred to as being "punishable by fine in a criminal proceeding." U. S. Code Congressional Service, Vol. 2, 81st Cong., 1st Sess., 1949, p. 1645. See also the similar allusions to the same statute, as amended, U. S. Code Congressional and Administrative News, Vol. 2, 85th Cong., 1st Sess., 1957, p. 1470.

■ Nor can it be contended that the provision in the Federal Rules of Criminal Procedure that "These rules are not applicable to * * * the collection of fines and penalties * * *", F.R.Cr. P. 54(b) (5), renders the above provision in the Rules inapplicable to the indictability of petty offenses. This is because the above clause in the Federal Rules of Criminal Procedure covers simply *"the collection* of fines and penalties", not the *imposition* of fines and penalties with which we are here concerned. Barron, Federal Practice and Procedure, Vol. IV, p. 532, fn. 11 (1951).

■ Defendant further objects that in New Jersey a State Sheriff, who for present purposes can only fingerprint one arrested for an indictable offense, could not indict defendant here, since in New Jersey one convicted of a petty offense is not indictable. It is true that petty offenses are not indictable in New Jersey. State v. Maier, 1953, 13 N.J. 235, 99 A.2d 21; State v. McGrath, 1954, 17 N.J. 41, 110 A.2d 11; State v. Chiarello, 1954, 17 N.J. 36, 109 A.2d 803. But this is beside the point. Federal offenses and State offenses are by no means the same or clearly comparable. Because of the difference between the Federal jurisdiction and that of the State, many Federal offenses are quite incomparable to those of the State. It is therefore impossible to compare the nature of every State offense with the nature of every Federal offense. The best that can be done is to use the statutory criterion as to the powers of the State Sheriff, and apply that to the powers of the Federal Marshal. This criterion, as previously stated, is whether or not, so far as this case is concerned, the offense of which the defendant was convicted was "indictable." That it was has been clearly shown. Further, it is unrealistic to infer that Congress has subordinated Federal law to State law without expressly stating such to be the case. Here Congress has used (quite probably for convenience) the duties of the Sheriff as a guide to the Marshal's duties. This refers to ministerial duties.

Thus, as shown, the Marshal may fingerprint upon arrest for an indictable offense. But Congress has not gone any further than to delineate these ministerial duties through the use of the State statute. There is no statutory delegation requiring a Federal Court to look to State law for the characterization of a Federal offense. In the absence of such express delegation, Federal law must govern and, as has been indicated, Federal law characterizes the instant offense as being indictable.

Defendant further objects that, since the Marshal did not fingerprint him upon his arrest, he can no longer fingerprint him. This is indeed a surprising conclusion, particularly in view of the decision by the New Jersey courts as to the purpose of fingerprinting only after arrest. This is clearly shown by McGovern v. Van Riper, 1945, 137 N.J. Eq. 24, 43 A.2d 514 to be simply to protect an individual from being fingerprinted before his arrest, i. e., at a time when it is not certain he will even be prosecuted. The purpose of this protection of the individual from fingerprinting when not to be prosecuted, is hardly subserved by preventing the fingerprinting after the defendant has been not only prosecuted but convicted, as here. As long as the protective purpose of the State provision is retained, the defendant has no right to object to the time adopted by the Marshal in doing his ministerial duty as to defendant, who must be fingerprinted for identification purposes for the protection of the public.

Defendant further objects that, since he surrendered voluntarily and was never arrested, he can never be fingerprinted. This claim answers itself. As well might a murderer who has surrendered himself claim his freedom from fingerprinting by the New Jersey Sheriff. Defendant's claim that, by attempting to fingerprint him, the Marshal is in effect guilty of unlawful arrest, is similarly without substance.

The fingerprinting of defendant by the Marshal is lawful. An order may be entered accordingly.