**UNITED STATES of America**

v.

**Howard KRAPF, doing business as Krapf Trucking Service, Appellant.**
**No. 13220.**

United States Court of Appeals
Third Circuit.

Argued Oct. 3, 1960.
Decided Dec. 29, 1960.

As Amended Feb. 7, 1961.

Arthur J. Piken, Jamaica, N. Y. (T Stanley Bloch, New York City, of counsel, on the brief), for appellant.

Frederic C. Ritger, Jr., Asst. U. S. Atty., Newark, N. J. (Chester A. Weidenburner, U. S. Atty., Newark, N. J., on the brief), for appellee.

Before BIGGS, Chief Judge, and HASTIE and FORMAN, Circuit Judges.

BIGGS, Chief Judge.

This is an appeal from an order of the United States District Court for the District of New Jersey, dated March 7, 1960, directing a convicted defendant, the appellant, Krapf, to submit himself to the United States Marshal at Newark for the purpose of being fingerprinted. The facts follow.

On July 15, 1959, the United States filed a criminal information containing twelve counts, charging Krapf, doing business as Krapf Trucking Service, with violating Section 222(a) of the Motor Carrier's Chapter of the Interstate Commerce Act, Title 49 U.S.C.A. § 322(a),[1] in that he knowingly and willfully violated certain regulations promulgated by the Interstate Commerce Commission pursuant to authority granted it by Section 304, Title 49 U.S.C.A. On September 14, 1959, Krapf pleaded guilty to seven counts in which he was charged with the following: in two counts with knowingly and willfully failing to provide two truck-tractors equipped with air brake systems with audible or visible warning systems to indicate to their drivers any loss or lack of air sufficient to prevent their being stopped, in violation of 49 C.F.R. 193.51; in two counts with knowingly and willfully failing to equip two truck-tractors with parking brakes capable of locking their rear driving wheels and adequate to hold on any grade on which they were operated, in violation of 49 C.F.R. 193.41; in another count with knowingly and willfully operating a truck-tractor and semitrailer combination the brakes of which, due to an air leak, were inadequate to control its movement and to stop it, in violation of 49 C.F.R. 193.40; in another count with knowingly and willfully failing to equip a truck-tractor with the means of activating the emergency feature of its brakes, in violation of 49 C.F.R. 193.43 (a) and, in another count with knowingly and willfully failing to equip a truck-tractor with two red-cloth flags, in violation of 49 C.F.R. 193.95(f). On October 9, 1959, Krapf was convicted upon his plea of guilty and he was sentenced to pay fines on the seven counts but the court ordered that sentence be suspended on three of the counts and that Krapf be placed on probation for three years on each of these three counts, the sentences of probation to run concurrently.

At the close of the sentencing proceeding, the United States Marshal attempted to secure Krapf's fingerprints. Krapf refused to submit to this procedure and the matter came on before the sentencing judge who considered argument in briefs submitted by both sides. The court concluded that Krapf should be fingerprinted, 180 F.Supp. 886, and entered an order to that effect. This appeal followed.

In substance, Krapf's contention in the court below and in this court was that the violations of which he was guilty were not such as to warrant his inclusion in that class of offenders whom the United States Marshal has the power to fingerprint. This challenge to the authority and power of the United States Marshal was based on Section 549 of Title 28 U.S.C., entitled "Power as sheriff", which

---

1. 49 U.S.C.A. § 322(a) provides: "Any person knowingly and willfully violating any provision of this chapter, or any rule, regulation, requirement, or order thereunder, or any term or condition of any certificate, permit, or license, for which a penalty is not otherwise herein provided, shall, upon conviction thereof, be fined not more than $100 for the first offense and not more than $500 for any subsequent offense. Each day of such violation shall constitute a separate offense."

provides: "A United States marshal and his deputies, in executing the laws of the United States within a state, may exercise the same powers which a sheriff of such state may exercise in executing the laws thereof." This provision, Krapf argues, gives to the United States Marshal, in the present case, the same power and only the same power to compel submission to fingerprinting as is possessed by a sheriff of the State of New Jersey. The law of New Jersey,[2] Krapf argues, empowers a sheriff to take the fingerprints of only the following classes of persons: those convicted of an indictable offense; well known criminals; those arrested for an indictable offense; those believed to be habitual criminals; and, those confined to jails or other penal institutions. Krapf asserts that he does not fall within any of these categories, and in particular he argues that he is not a person convicted of an indictable offense since, he asserts, under the law of New Jersey offenses analogous to those of which he was convicted are not characterized as indictable offenses.

The district court did not concede that Section 549, Title 28 U.S.C., is the sole source from which the authority of a United States Marshal to take fingerprints may be derived. The court did not fully develop this point, however, since it found that the United States Marshal had the power, under Section 549, to fingerprint the class of persons to which the appellant belongs, and hence, did not reach the question whether such authority existed apart from that provision. Pointing out that under Rule 7(a), Fed.Rules of Crim.Proc., Title 18 U.S.C., a violation of Section 222(a) is indictable and reasoning that for purposes of defining the powers of a United States Marshal under Section 549, federal law should determine the meaning of the term "indictable" as used in the New Jersey statute, the court below held that a conviction of a violation of Section 222(a) is a conviction of an indictable offense within the purview of Section 549. We agree that a United States Marshal had the authority and power to take Krapf's fingerprints but do not reach the questions relating to the interpretation of the law of New Jersey and the construction of Section 549 that were decided by the court below for we hold that the power sought to be exercised by the United States Marshal in the instant case exists quite apart from powers which may have been conferred on him by Section 549.

In our view of the case two questions must be determined. First, from what source, apart from Section 549, may the power of a United States Marshal to take fingerprints be derived? Second, does the power of a United States Marshal to take fingerprints extend to compelling a person such as Krapf, convicted of a violation of Section 222(a) of the Interstate Commerce Act, to submit to fingerprinting?

The office of the United States Marshal can best be described as that of a "national peace-officer". In re Neagle, C.C.Cal., 39 F. 833, 854–855, affirmed 1889, 135 U.S. 1, 10 S.Ct. 658, 34 L.Ed. 55. His duties include both the execution of the lawful process and orders of the courts of the United States and the general enforcement, maintenance and administration of federal authority. In discharging his duties as a Marshal he acts concurrently as an officer of the federal judiciary and as an executive officer.

Congress has provided that the Attorney General supervise and direct Marshals in the performance of public duties.[3] The Attorney General, himself,

---

2. N.J.S.A. 53:1–15 provides in pertinent part: "The sheriffs * * * shall immediately upon the arrest of any person for an indictable offense * * * take the fingerprints of such person according to the fingerprint system of identification established by the Superintendent of State Police * * *."

3. Section 547(c), 28 U.S.C., provides: "The Attorney General shall supervise and direct marshals in the performance of public duties and accounting for public moneys. Each marshal shall report his official proceedings, receipts and disbursements and the condition of his office as the Attorney General directs."

as a delegate of the President, exercises a part of the powers vested in the executive branch of the federal government. Thus, a United States Marshal, when acting pursuant to directions of the Attorney General, is, himself, vested with the executive power necessary to comply with these directions. See In re Neagle, supra, 135 U.S. at pages 65–68, 10 S.Ct. 658. In such a case the Marshal acts as an arm of the Attorney General who is in turn an arm of the President. The powers conferred upon the Marshal by Section 549 are, therefore, by no means the only powers that he possesses but should be considered as constituting a supplement of power, the exercise of which is itself subject to the direction and supervision of the Attorney General. In any event Section 549 cannot be construed as a limitation upon the power of the Marshal to discharge duties imposed upon him by the Attorney General.

 It has long been recognized that modern law enforcement procedure includes the acquisition, collection, classification and preservation of indentification records of those processed through the criminal tribunals of the sovereign. Congress has, therefore, provided the United States Department of Justice with the means and authority necessary to effect a central identification system. See 5 U.S.C.A. §§ 300, 340. All of the States of this Circuit have provided similar facilities for their law enforcement agencies. At this date, there is certainly no doubt that the establishment and implementation of such a system is, to the extent that it is reasonably administered, within the power of the federal government. See United States v. Kelly, 2 Cir., 1932, 55 F.2d 67, 83 A.L.R. 122. Cf. United States v. Amorosa, 3 Cir., 1948, 167 F.2d 596, 599. Nor can it reasonably be denied that a United States Marshal, by virtue of his duties in respect to the apprehension, custody and commitment of offenders against federal authority is in a uniquely advantageous position to gather pertinent information respecting offenders for the purpose of forwarding it to its central repository in the Department of Justice. Therefore, as a general proposition, it must be held that the Attorney General through his delegate, the United States Marshal, has the power to require offenders against federal law to submit to reasonable identification procedures, such as fingerprinting, insofar as such a procedure is necessary and proper to facilitate the enforcement and execution of federal law. It remains to be considered whether the Attorney General has in fact imposed a duty upon United States Marshals to fingerprint that category of persons to which Krapf belongs, and, if he has, whether the discharge of that duty by a Marshal would constitute an unreasonable exercise of executive power.

Both the duties and the powers of United States Marshals have been set out by the Attorney General, pursuant to his authority under Section 547(c), in the United States Marshals Manual. Part 702.01 of the Manual has, since March 30, 1959, directed that every person taken into the custody of a Marshal in connection with a violation of federal law be fingerprinted and that the fingerprints be forwarded to the Department of Justice. This direction, on its face, purports to impose the duty and confer the power upon the Marshal, in the present case, to compel Krapf to submit himself for the purpose of being fingerprinted since he was undoubtedly in custody by reason of having violated federal law. Krapf, however, contends, in effect, that the direction of the Attorney General, if construed as applying to him, should be struck down as an unreasonable exercise of executive power for the reason that a conviction of violating Section 222(a) of the Interstate Commerce Act is not tantamount to conviction of a crime. This argument presents the narrow question which we must decide next, viz., whether a violator of Section 222(a) of the Interstate Commerce Act is an offender, whose fingerprinting is reasonably necessary to facilitate the enforcement and execution of federal law.

Initially, it should be pointed out that fingerprinting is not a punishment. It is

a means of identification which is useful in many circumstances some of which relate to the enforcement of our laws. Unless the burdens that this procedure places on the individual are unreasonable, therefore, it will be upheld as one of those annoyances that must be suffered for the common good. In this connection it is appropriate to quote the words of Judge Augustus N. Hand in United States v. Kelly, supra, which express our views: "Any restraint on the person may be burdensome. But some burdens must be borne for the good of the community. * * * The slight interference with the person involved in finger printing seems to us one which must be borne in the common interest." [55 F.2d 68]

 Krapf's offense, in our judgment, fully warrants the imposition of this burden upon him for the purpose of facilitating the execution of his sentence and better assuring the enforcement, in the future, of federal law. The offense which Krapf committed consisted of willfully and knowingly subjecting any person coming into contact with his trucking equipment to serious hazards. The fact that he did this in the ordinary course of his business and considered it to be similar to a traffic violation does not mitigate the seriousness of his omissions. The frightening statistics growing out of the operation of unsafe motor vehicles demonstrate the necessity for the strictest compliance with safety regulations such as those with which we are here concerned. It is true that Krapf's crimes were not *mala in se*. Riss & Co. v. United States, 8 Cir., 1958, 262 F.2d 245. It is equally apparent, however, as the opinion of the court below amply demonstrates, 180 F.Supp. 889-890, that Krapf's actions were misdemeanors, and were criminal in nature. Other courts are in accord. See United States v. E. Brooke Matlack, Inc., D.C.D.Md.1957, 149 F.Supp. 814. It must be remembered that fingerprinting is not a punishment but a procedure, the purpose of which is to facilitate law enforcement. With that purpose in mind, there is no persuasive reason to draw a distinction between crimes solely on the basis of their being *mala in se* or *mala prohibita* in determining which offenders may be required to submit to fingerprinting.

The judgment of the court below will be affirmed.