Werner **THIELEBEULE** et al., Plaintiffs,

v.

**M/S NORDSEE PILOT** and Schiffarts K.G., Defendants.

No. 71 Civ. 4377.

United States District Court,
S. D. New York.

Nov. 5, 1971.

Abraham E. Freedman, New York City, for plaintiffs.

Whitney North Seymour, Jr., U. S. Atty., by Gilbert S. Fleischer, Atty. in charge, Admiralty & Shipping Section, Michael J. Pangia, U. S. Dept. of Justice, New York City, of counsel, for the United States.

GURFEIN, District Judge.

An action was brought in rem against the vessel M/S NORDSEE PILOT, of

German registry, now in the Port of New York by members of her crew for wages due. Before he would attach the vessel the United States Marshal required the plaintiff seamen to pay over $2,000 for the costs of a watchman aboard the vessel for twenty-four hours a day, plus insurance and other incidental "costs." The Marshal stated that the $2,000 advance would cover expenses for about ten days. The in rem action is entitled "Action under Special Rule for Seamen to Sue Without Security and Prepayment of fees (28 U.S.C. § 1916)." The United States is not a party to the in rem proceeding and has no interest in the vessel.

An order to show cause is now brought for an order requiring the Marshal to refund to the plaintiff seamen the $2,000 previously paid and to require him to continue to hold the vessel in his custody pending a sale, without any further payment by the seamen plaintiffs.

The Government contends that since no action has been commenced against the Marshal, this Court has no jurisdiction; and that, in any event, proper service was not effected because a copy of the order to show cause was delivered to the office of the Department of Justice, Admiralty and Shipping Section and not to the U. S. Attorney, the Attorney General of the United States at Washington, D. C. and the U. S. Marshal "as required by Rule 4(d)(5) F.R.C.P."

■ I do not believe that a separate action against the Marshal is necessary in a case like this. The Marshal in seizing a vessel is acting as an officer of this Court, see United States v. Krapf, 285 F.2d 647 (3 Cir. 1961), and this Court has inherent jurisdiction to prevent the Marshal from exacting improper fees or advances of expenses in executing the process of this Court. Nor is there any lack of notice here. The U. S. Attorney and the Department of Justice appeared by their representatives and filed learned and extensive briefs on the merits of the controversy. If a jurisdictional base is needed, it may be found in Admiralty Rule E(4)(e) specifically referring to "Expenses of Seizing and Keeping Property." If Court interpretation of the Rule and of 28 U.S.C. § 1921 is required, it should be done in the action in rem. To compel resort to a separate plenary action would be unduly to delay a provisional remedy.

■ Turning to the merits, however, the Government must prevail. Seamen are privileged plaintiffs who are exempted from "prepaying fees or costs or furnishing security therefor" (28 U.S.C. § 1916).[1] Section 1921 of 28 U.S.C. provides that, among others, only the following "fees" of United States Marshals shall be collected and taxed as "costs," except as otherwise provided:

"For the keeping of property attached (including boats, vessels, or other property attached or libeled) actual expenses incurred, such as storage, moving, boat hire, or other special transportation, watchmen's or keepers' fees, insurance, and $3 per hour for each deputy marshal required for special services, such as guarding, inventorying, moving, and so forth . . . ."

The statute appears to say that "actual expenses incurred such as . . . watchmen's or keepers' fees" shall be collected and taxed "as costs." The statute goes on to say:

"The marshals *shall* collect, in advance, a deposit to cover the initial *expenses* for such services and periodically thereafter such amounts as may be necessary to pay such expenses until the litigation is concluded." (emphasis added)

It adds the further provision that "[t]he marshal *may* require a deposit to cover

---

1. 28 U.S.C. § 1916 reads:
   "In all courts of the United States, seamen may institute and prosecute suits and appeals in their own names and for their own benefit for wages or salvage or the enforcement of laws enacted for their health or safety without prepaying fees or costs or furnishing security therefor."

all *fees* and *expenses* herein prescribed." (emphasis added)

We are, thus, confronted with two statutes, one of which (§ 1916) exempts the plaintiff seamen from prepaying "fees or costs" and the other of which (§ 1921) tells us that the marshal shall collect as "fees . . . collected and taxed as costs" the "actual expenses incurred" for "watchmen's or keepers' fees . . ." Although the words "fees" and "costs" are used both in the seamen's exemption statute (§ 1916) and in the section dealing with seizures in admiralty (§ 1921) and would appear to be *pari passu*, the exemption for seamen plaintiffs is not mentioned in the provision for advance payment in § 1921.

On August 11, 1971, the Director of the U. S. Marshal's Service issued a service directive 71–7 which states:

> "4. The statute (28 U.S.C. § 1916) relieving a seaman from prepayment of fees and costs of suit does not give seamen a right to avoid prepayment of vessel custodial costs such as those expenses necessary for wharfage, keepers, maintenance, and insurance *against damage and injury done by* vessel while in custody. Cohn v. George, 297 F.Supp. 527 (D.C.Ill. 1968).
>
> 5. In cases filed under the so-called Seaman's Act cited above, the marshal shall not seize a vessel without first receiving a deposit of monies sufficient to cover expenses necessary for wharfage, keepers, maintenance and insurance."

Cohn v. George, *supra*, held exactly what the quoted service directive cites it for. It is the only decision on the point.

To complicate matters further, the marshal may not expend moneys except under a specific appropriation (31 U.S. C. § 665), nor may he pledge the credit of the United States in advance of an appropriation.[2] No money has been appropriated by the Congress for this purpose. Nor can the marshal be expected to advance moneys out of his own pocket.

Thus the search for legislative intention ends in a cul de sac. The matter can be summed up briefly: no money —no libel.

The solution obviously could be the appropriation of a marshal's fund by the Congress to aid seamen who must libel their vessel to recover their wages. Whether the matter is of sufficient recurrence to require such action is beyond the knowledge of the Court. This case is probably unusual in that even the mortgagee appears to have abandoned the vessel. In the ordinary case either the holder of a preferred ship mortgage or a maritime lienor will be the libellant and the seamen will merely file their claims.[3]

While I am sorry for the foreign seamen stranded here I see no course of action open to them except to ask their union officials to lend the keeping costs until a sale, upon some arrangement for priority of payment when the vessel is sold.

The motion is denied.

---

2. 31 U.S.C. § 665 reads, in part:
   "(a) No officer or employee of the United States shall make or authorize an expenditure from or create or authorize an obligation under any appropriation or fund in excess of the amount available therein; nor shall any such officer or employee involve the Government in any contract or other obligation, for the payment of money for any purpose, in advance of appropriations made for such purpose, unless such contract or obligation is authorized by law."

3. In an unreported case in the District Court for Maryland the Court authorized the U. S. Marshal to borrow from a bank to pay the wages of the "skeleton crew" apparently needed to prevent damage to the vessel. Calhoon et al Trustees v. S.S. Alma Victory, Civ. 71–206W. Even if I were convinced that the statute permitted such borrowing by the U. S. Marshal, there is no evidence as to what the M/S Nordsee Pilot could bring on a sale.