# Special Deputations of Private Citizens
# Providing Security to a Former Cabinet Member

The United States Marshals Service may not grant special deputy status to private citizens hired
by a former cabinet member. By regulation, the Director of the Service may confer such status
only upon selected federal officers or employees or state and local law enforcement officers.

Although the Attorney General may deputize private citizens, such appointments must further
federal law enforcement functions within the authority of the Marshals Service. 28 U.S.C.
§ 569(c).

A federal law enforcement function sufficient to justify the appointment of special deputy
marshals should be determined by the Marshals Service in the first instance, on the facts of
each case in light of a number of different factors. In this case, no sufficient federal law
enforcement function exists to permit the Attorney General to deputize these private security
personnel.

March 18, 1983

MEMORANDUM OPINION FOR THE ASSOCIATE ATTORNEY GENERAL

You have asked that we examine the authority of the United States Marshals
Service to provide special deputations to security personnel of a former cabinet
member, Mr. A. In addition, you have requested our advice regarding the
issuance of special deputy badges and credentials to the specially deputized
security personnel. For the reasons set forth below, we have concluded that the
Marshals Service lacks the authority to appoint the former cabinet member's
staff as special deputies. We further conclude that on the facts as we understand
them the Attorney General also lacks the authority to make the appointments.
Accordingly, the issuance of badges and credentials need not be considered
further.

## I. Factual Background

In 1978, the Marshals Service, at the direction of the Deputy Attorney
General, granted special deputy authority to four private citizens employed by
Mr. A for the purpose of providing him with personal security. According to
the Deputy Director of the Marshals Service, the deputations have been re-
newed annually with the concurrence of the Department of Justice.

In 1982, Mr. A's assistant sent two letters to the Deputy Director. The first
letter requested that three members of the former cabinet member's staff be
deputized as special deputy United States marshals. One of the proposed

deputations is for the purpose of replacing a previously designated special deputy who has left his position. The other two are in addition to the four positions previously approved for Mr. A's staff. The letter states that "deputation of these three employees will considerably augment our ability to cope with a relatively new security problem that was the subject of discussions between [Department officials and Mr. A]."[1]

The second letter requested that the Marshals Service issue credentials, including photographs and imbedded badges, for Mr. A's security personnel. Currently, these special deputies use their oath of office document to identify themselves. According to Mr. A's assistant, this form of identification "is met by degrees of dubiousness ranging from skepticism to outright rejection." In order to avoid a situation of embarrassment to the Marshals Service or to Mr. A, as well as confusion and delays that are alleged to create potentially hazardous security situations, Mr. A's assistant requested the issuance of credentials to be used for identification purposes.

The Deputy Director of the Marshals Service directed this correspondence to your Office. In a memorandum, the Deputy Director has indicated that on the occasion of each annual renewal, the Marshals Service has expressed reservations regarding the propriety of the deputations and what they regard as "questionable legal authority" for their issuance. The memorandum further states that the Marshals Service knows of no other circumstance in which the deputation authority has been interpreted to allow the commissioning of private citizens for the purpose of providing personal protection to a private citizen.[2]

The Marshals Service has requested your direction in responding to the request for the issuance of badges and credentials. This determination seems necessarily to involve the issue whether the special deputations are appropriately granted in the first instance. You have referred these two issues to this Office.

## II. Legal Issues

A United States marshal has been described as a "national peace officer." *In re Neagle*, 39 F. 833, 854–55 (C.C. Cal. 1889), *aff'd*, 135 U.S. 1 (1890). In general terms, his duties include the "enforcement, maintenance and administration of the federal authority." *See United States* v. *Krapf*, 285 F.2d 647, 649 (3d Cir. 1960). More specifically, the marshal's duties include, among others, providing courtroom security for the federal judiciary;[3] providing personal

---

[1] We understand that the "new security problem" involves harassment of Mr. A by a group that is alleged to have disrupted his schedule by sending false communications to the parties with whom he had appointments. We are unaware of any allegations of direct threats to Mr. A's personal security from the group. An FBI investigation is currently underway in this matter, and the FBI is also investigating a separate incident involving a bomb threat from an unknown source.

[2] The Marshals Service claims to recognize the "uniqueness" of Mr. A's circumstances and to understand the considerations which have resulted in the decision to grant the deputations. The Service also states, however, that it is unaware of the actual occurrence of any direct physical incident which required the intervention of the former cabinet member's security personnel under color of their authority as United States marshals. We are similarly unaware of any direct physical threats.

[3] 28 U.S.C. § 569(a); *see* 28 C.F.R. § 0.111(d).

protection to prevent disruption of the federal judicial process by criminal intimidation;[4] assisting in the protection of federal buildings and property;[5] executing writs, process, and orders;[6] disbursing certain salaries and moneys;[7] collecting and accounting for fees;[8] custody of prisoners;[9] and protecting certain Government witnesses.[10]

Significant powers are conferred upon United States marshals and deputy marshals so that they may carry out their functions:

> United States marshals and their deputies may carry firearms and may make arrests without warrant for any offense against the United States committed in their presence, or for any felony cognizable under the laws of the United States if they have reasonable grounds to believe that the person to be arrested has committed or is committing such felony.

18 U.S.C. § 3053. Moreover, "in executing the laws of the United States within a State," they "may exercise the same powers which a sheriff of the state may exercise in executing the laws thereof." 28 U.S.C. § 570.

Most important, for purposes of the issue you have raised, United States marshals may "command all necessary assistance to execute their duties." 28 U.S.C. § 569(b). This section is but the latest version of the authority first contained in § 27 of the Judiciary Act of 1789, which itself merely reflected the common law rule that the sheriff had the power to summon the *posse comitatus* and that the citizen had the duty to participate if called upon:

> It is the duty and the right not only of every peace officer of the United States, but of every citizen, to assist in prosecuting, and securing the punishment of, any breach of the peace of the United States. It is the right, as well as the duty, of every citizen, when called upon by the proper officer, to act as part of the *posse comitatus* in upholding the laws of his country.

*In re Quarles,* 158 U.S. 532, 535 (1895). *See also In re Neagle,* 135 U.S. 1, 56–61 (1890); *Ex parte Siebold,* 100 U.S. 371, 394–96 (1880); 6 Op. Att'y Gen. 466, 471 (1854).

By statute, the Attorney General is specifically empowered to supervise and direct the marshals in the performance of public duties.[11] The Attorney General

---

[4] *See* 28 C.F.R. § 0.111(e).

[5] *See* 28 C.F.R. § 0.111(f).

[6] 28 U.S.C. § 569(b).

[7] 28 U.S.C. § 571 provides that the marshals shall pay the salaries, office expenses, and allowances of United States attorneys, their assistants, clerks, and messengers; the marshals, their deputies, and clerical assistants; the United States trustees, their assistants, staff, and other employees; and circuit and district judges, clerks and deputy clerks of court, court reporters, and other court personnel.

[8] 28 U.S.C. § 572.

[9] *Id.* § 573.

[10] 18 U.S.C. note prec. § 3481; *see* 28 C.F.R. § 0.111(c).

[11] 28 U.S.C. § 569(c).

is also specifically empowered to authorize appointment of deputy marshals.[12] These powers have been delegated to the Director of the United States Marshals Service.[13] The Executive's common law and statutory power to summon a *posse comitatus* has, by regulation, been conferred as a power to appoint special deputy marshals. The Attorney General has also delegated to the Director of the Marshals Service the authority "to deputize selected officers or employees of the United States to perform the functions of a U.S. deputy marshal in any district designated by the Director, and to deputize whenever the needs of the U.S. Marshals Service so require selected State or local law enforcement officers to perform the functions in any district designated by the Director." 28 C.F.R. § 0.112.

### III. Discussion

#### A. *Historical Practice*

The Marshals Service regularly receives requests for special deputations. The authority of a United States marshal is the easiest and possibly the only practical legal means to carry firearms interstate or through airport security checkpoints and on board commercial airline flights. The Marshals Service has repeatedly taken the position that the use of the special deputation authority should be limited to those circumstances where the United States marshal needs the deputations in order to accomplish his or her specific mission. This philosophy is reflected in the current regulation which authorizes deputation only of selected officers or employees of the United States or selected State or local law enforcement officers when the needs of the Marshals Service so require. *See* 28 C.F.R. § 0.111.

These legal and policy considerations have been the basis for a number of refusals to grant or extend special deputy authority. A prior opinion of this Office considered the issue whether the Attorney General has authority to deputize privately employed security guards to facilitate protection of a private individual. That opinion reasoned that a deputy marshal has lawful authority only when he is performing a federal function, and thus the Attorney General could assign the marshal to protect an individual only when a federal function was involved. Finding none in the case of a private citizen, at least when he was not a prospective witness in a federal proceeding, we concluded that no statutory authority existed.

There have been requests from others for deputation, which were denied in instances where the Marshals Service had no enforcement authority, notwithstanding that some federal law enforcement function or federal official was involved. In 1979, the Department received a request from a Congressman, inquiring whether private security officers for a Presidential candidate might

---

[12] Title 28 U.S.C. § 562 provides in pertinent part that "[t]he Attorney General may authorize a United States marshal to appoint deputies."

[13] 28 C.F.R. § 0.112.

be designated as federal marshals in order to obviate the problem of obtaining state permits to carry firearms. This Office advised the Congressman on behalf of the Department that under the regulations and policy of the Department there was no authority to deputize the security officers because the Marshals Service had no role in protecting Presidential candidates.

Similarly, in 1978, the Marshals Service determined not to renew the special deputations of officials of fourteen federal departments and agencies. Generally, such special deputy authority was used to provide personal protection for the head of the department or agency. At the time, most heads of executive departments and agencies were not covered by the federal assault statute, 18 U.S.C. § 1114.[14] It was thus not a federal crime, in most circumstances, to threaten or harm them, and thus, in the view of the Marshals Service, not a federal law enforcement function to protect them.

The determination of the Marshal's Service was endorsed by the Deputy Attorney General, who stated:

> The Marshals Service had correctly observed that the applicable statutes and regulations by their terms limited such deputations to circumstances where the special deputy was performing the duties of a deputy marshal and "the needs of the U.S. Marshals Service" required the deputation.

The Deputy Attorney General also expressed concern that the special deputations might be viewed as directly contravening the intent of Congress by providing authority to make arrests and carry firearms to officers to whom Congress specifically had chosen not to grant those powers. Finally, the Marshals Service had found that it was impossible to control or review the use of the special deputy authority if it was widely conferred. The Service was concerned that it not be held liable for actions over which it has little or no control.

## B. The Present Request

The Marshals Service has advised us that the four special deputations provided to the former cabinet member's staff are the only ones out of 637 currently in force that have been granted for "private persons . . . to provide private security to a private person."[15] In the view of the Marshals Service:

---

[14] Such coverage is now effectively provided by Pub. L. No. 97–285, 96 Stat. 1219 (1982), which amended 18 U.S.C. § 351 to make it a federal crime to kill certain Executive Branch officials and members of the President's staff.

[15] In fact, these deputations appear to be the only ones currently granted to anyone to protect a private person other than in the general course of the marshal's duties, for example, the protection of witnesses. With the limited exception of federal contractor employees at certain military sites, these deputations appear also to be the only ones currently conferred upon anyone other than a federal, state, or local law enforcement officer. Even within this limited exception, there is a specific federal law enforcement function being performed.

the request to deputize a citizen's bodyguards does not meet any of the requirements for special deputation. This is not a law enforcement function of the United States and would clearly provide law enforcement authority to private citizens for private purposes not clearly intended by statute or regulation.

We agree that the Marshals Service is without explicit authority to grant special deputations to Mr. A's staff. Pursuant to 28 C.F.R. § 0.112, the Director of the Marshals Service is expressly authorized to confer special deputy status only upon selected federal officers or employees or state and local law enforcement officers. The members of Mr. A's staff do not meet this qualification.

A separate question is whether the Attorney General himself has statutory authority to grant special deputations to private citizens. By statute, the Attorney General may authorize appointment of deputy marshals; there is no restriction to federal, state, or local officials. Notwithstanding the delegation of authority to the Director of the Marshals Service, the Attorney General retains at least as much of the statutory authority as he has not expressly delegated. He could, if the other conditions were satisfied, deputize a private citizen. Such a power merely reflects that the power to designate special deputy marshals originated in the power to summon a *posse comitatus*, which was, of course, composed of private citizens.

The relevant limitation on the Attorney General's power to appoint special deputies is that such appointments must be in furtherance of the marshal's "performance of public duties." 28 U.S.C. § 569(c). We believe that the marshal's "public duties" are appropriately construed to mean federal law enforcement functions within the authority of the Marshals Service. The Marshals Service has consistently given this interpretation to the scope of its authority. A similar construction is reflected in 28 C.F.R. § 0.112 itself, which limits appointment of special deputies to circumstances in which "the needs of the Marshals Service so require." The interpretation is compelled, we believe, by the nature of the marshal's authority. A careful reading of cases such as *In re Neagle*, *supra*, and *Ex parte Siebold*, *supra*, indicates that the Attorney General's authority to assign United States marshals to enforce federal law, including the performance of protective services, is limited to circumstances in which the marshal has lawful authority, that is, where he or she is performing a federal law enforcement function.

It is difficult for us to define with precision what constitutes a sufficient federal law enforcement interest that will justify the use of the special deputy authority. The answer in many, if not most or all, cases will depend on the particular facts. Moreover, we think that the question of sufficiency should be addressed by the Marshals Service in the first instance, given the Service's familiarity with its functions and allocation of resources. The Service, for example, has defined the condition expressed in 28 C.F.R. § 0.112, restricting deputations to circumstances in which "the needs of the U.S. Marshals Service so require" to mean when the marshal requires the deputations to accomplish

72

his or her specific mission. Thus it seems to us that the determination when deputation authority is properly conferred must be made with reference to the particular duties of the marshal in practice and his or her ability to perform those duties without further assistance.

Although we cannot draw firm conclusions in the abstract, we think that the following factors are relevant in determining the sufficiency of the federal law enforcement function: (1) whether, as a matter of law, the marshal has the authority to perform the function that the special deputy will perform; (2) whether, as a matter of policy, the function is of sufficient importance to federal law enforcement efforts generally and to the Marshals Service in particular that the marshal would normally undertake to perform the function; (3) whether the marshal is unable to perform the function personally because of an emergency situation or an unusual demand on the marshal's resources; (4) whether conferring special deputation authority in the particular instance contravenes expressed congressional intent as to the permissible uses of the marshal's authority, including limitations imposed through the budget process on the number of marshals and deputy marshals generally authorized; (5) whether the Marshals Service can exercise appropriate control over the special deputy marshal, given the number of deputations outstanding and the particular function to be performed; and (6) the likelihood and extent of any potential liability of the Marshals Service for the actions of the special deputy. The balancing of these and possibly other factors known to the Marshals Service will depend on the particular facts.[16]

## Conclusion

As we have stated, the Marshals Service lacks authority to grant the request for three additional special deputations. Moreover, based upon our understanding of the facts, no sufficient federal law enforcement function exists such that the Attorney General would have the authority to grant the request. In the absence of some additional federal purpose of which we are not aware, we recommend that the Marshal's Service advise the former cabinet member that his requests have been denied. As far as the three outstanding deputations are concerned, our conclusions herein require at a minimum that the deputations not be renewed upon their expiration. We suggest, in addition, that the Marshals Service consider revoking the deputations prior to expiration, possibly

---

[16] We do not conclude that no federal function would ever be involved in the protection of a private citizen. Such a function exists, for example, in protecting government witnesses and possibly other participants in the federal judicial process. In response to some particular, serious threat of violation of federal law, federal law enforcement efforts might appropriately include personal protection for other persons as well. We do not believe that any particular federal law enforcement purpose has been the basis for the special deputations of Mr. A's staff in the past. We are aware of the references to the "new security problem," but it does not appear that this problem presents a sufficient federal interest to justify the requested deputations. If there is some special federal law enforcement purpose of which we are not aware, then the request for the additional deputations might be presented to the Attorney General. We are sure that policy considerations, such as the possible liability of the Marshals Service for the actions of special deputy marshals, will be taken into account in the Attorney General's decision at that time.

following a period of time during which Mr. A's staff might be able to make some alternative arrangements. Finally, if the deputations are to be continued through the end of the term for which they have been granted, we suggest that they be reauthorized by the Attorney General. It is our understanding that the special deputations were conferred by the Marshals Service, with the concurrence of the Department. As noted above, the Director of the Marshals Service does not have the authority to deputize private citizens.

RALPH W. TARR
*Deputy Assistant Attorney General*
*Office of Legal Counsel*
